May it please the Court, my name is Michael Conger. I'm here for the plaintiff and appellant Janet Wood. What happened in the court below should not have happened, and we took this appeal because my client has sent me here to get a small measure of due process. We want to go back to the trial court, and if the Article III standing issue needs to be raised, then we would just like the opportunity to present evidence of why we have all three elements of standing. Okay. Ms. Conger, if it went back, what evidence apart from what's in the record would you expect to adduce? We can produce evidence of, one, a pecuniary injury, which is sufficient to give rise to the first element of standing. That's a word, so I mean, that's kind of why you've gotten in a bit of a pickle as it is. I mean, because sure, the complaint in general terms alleges injury, but the difficulty is whether it's concrete enough. So what concretely would you plan to show? We have documents from the pension board that quantifies the dollar amount of the injury to the unmarried retirees, and our theory of the case is that the policy, the ordinance, impacts women at a statistically significant rate than men. So it's two things. One is the Title VII, and the reason we filed in federal court, frankly, was because the case law in the federal case law in Title VII under the disparate impact theory, which originated with Griggs, is better than it is in California under the DFEH. Mr. Congodale, even if you assume that the survivor spouse benefit gives a disproportionate benefit to married retirees, from our review of the record, it shows that about 46% of the women who retire are married, and that's at ER 215. Why, then, is that enough to establish disparate impact on the basis of gender as opposed to marital status? It's the type of disparate impact that this court discussed in the Stout opinion, where if what you're looking at is the privilege of employment, and here is the more valuable retirement benefit, the protected class, here female, receives the benefit four-fifths or less of the time that the unprotected class does. But what is the evidence that you've adduced to show that? Well, on this record, for a completely different reason, Judge Wardlaw, we presented evidence that shows that males get the more valuable benefit 76% of the time, and females get it 46% of the time. So men get it about three out of every four times, and women get it only about one, less than one out of every two times. And in Stout, remember, because disparate impact was developed after it was realized that intentional discrimination is sometimes very difficult to prove. I think we understand that. I think what we're grasping for is, you know, what specific statistics, either in the record or that you would like to put in the record, that would show that the policy has a disparate impact upon women as opposed to unmarried people. Well, it occurs to unmarried people 100% of the time, and it just so happens that women retire unmarried from the city of San Diego at a much higher incident than men. The other evidence, to answer your question directly, we have a statistician already. We have a standard deviation analysis that we could have presented that we didn't because it wasn't raised. You weren't allowed to present this sort of analysis that you have. Yes. That would support your injury, in fact, caused by this city policy. Correct, Your Honor. And there was a Supreme Court case, in my recollection, called Hazelwood, that said if you can show that the statistical anomaly is at least between two and four standard deviations from the expected amount, which this is, that that raises a presumption that, again, the ordinance unintentionally is, and this is what it said in Stout, we're looking at the outcome of the practice at issue. It's not the underlying intent. I'm not suggesting that the city passed this ordinance because it doesn't like females or wants to deprive them of benefit. I'm only suggesting that this, because of a reason I don't know the answer to, a sociological reason, there are women in the public sector, at least in the city of San Diego, happen to retire at a greater incidence being unmarried than men. I don't know the reason for that. But isn't it the case, though, that if someone retires, a single female retires, doesn't get this benefit, she gets money paid in a lump sum, does she not, if she requests it? She does. She can, but that lump sum dollar value is financially a dollar value less than what the married person can afford. Well, maybe, because in the married person's case, it's a question of how long they live. If the married person lives only a week longer and then dies, then the married person ends up with far less than the single person who got the cash, right? And, Judge Smith, that could happen, but it almost never does. But, for example, if you look at the Norris case, where the Supreme Court said, you can't pay different retirement benefits based on gender. You cannot do it, period. Women live longer than men. We know that. And if you go back two cases before Norris was Manhart, which we've cited and discussed, in devising a pension plan, public employers, what they did was, they know that women live longer than men. So, originally, they made women pay a higher contribution because they would get the benefit longer. Not always, because sometimes women die before men, but usually they don't. Actuarially, statistically, they don't. I would also point out, we filed this as a putative class action, and we got off on this tangent with a scheduling order that we put into the record that the defendant wanted to bring particular affirmative defenses, not standing. So you know the history of how this came up. But in Manhart, the court said you can't charge females more than males because they get the benefit longer, not always. They may die sooner. And then in Norris, they said you can't pay a different benefit. If they make the same contribution, you can't pay a different benefit. This really is the same exact thing with the disparate impact of the policy. It's really a marital status discrimination case. That happens 100% of the time. That's a state law claim. We filed in federal court because it has a Title VII impact also statistically. Is the state claim what, a FEHA claim? Pardon? Is it a Fair Employment and Housing Act claim? Yes, sir. In the California government code, I believe it's 12940. It's a marital. California has two additional protected classes, is my recollection, that Title VII does not, marital status and sexual orientation. Otherwise, they're pretty much the same. The California law is not as developed on disparate impact. I'm sorry, Judge. Kazza, you know, I was a district court judge as was Judge Ribery. In this type of situation, I think my customary practice was to issue in order to show cause why the case should not be dismissed for lack of jurisdiction and then get briefing on it. Can you point me to any case or law or local rule or anything that requires the judge do that practice? No, I can only cite to you the case law that we did in the Supreme Court cases. And if you just look at the order that Judge Beneath has issued, repeatedly he said, this is in the record of 293, 294, and 295, he commented that the plaintiff hasn't come forward with any evidence at this stage demonstrating no documentary evidence of Article III standing. That's because it wasn't raised. I didn't come over two years' time to this day to go back there to present evidence I don't have. I have evidence with me, some additional evidence. The judge said also on 294, plaintiff's declaration and exhibits do not evidence a concrete injury because that was not an issue that was raised by the defendant in the motion for summary judgment that I was opposing. It goes on. There's five, six, seven, eight references. I can go through them where the trial judge was noting that we didn't produce evidence on a particular issue, and he is exactly right because I tried to address the issues raised and I did not put extra hay in the motion and try to confuse the judge over issues that weren't raised. I wouldn't do that. Why would you do that? My opposition papers were 12 pages long, which as a district judge you'll remember I think I had a 20-page budget. I dealt with the issues as succinctly in a brief as I could. And then the trial judge, all I ask is that in four and a half months of taking on a submission, a minute order, a minute order, give me two weeks to present the evidence and take him through why I have injury in fact, why I have causation, what my evidence is, and why that the claim I address is redressable. How is it redressable? What do you ask for in the end? It could be redressable by ordering the ordinance change, declaring invalid, for example, to give married and unmarried people the exact same choice. The reason that this benefit is worth a lower dollar value and the pension system is actually calculated to a penny for every retiree is because the unmarried retiree only gets back about half of their contributions. The married retiree gets back all of their contributions, and that's why there's a difference. But that's not really true, is it, counsel? I thought we were just talking about the fact that the unmarried person gets all of his or her contributions back upon retirement. No, they get back the employee contributions and not the employer. So they get back about half. Oh, I see. And that's in the record 189. It's a declaration, again, put in for a different reason by the city's pension system retirement administrator, Larry Grissom, and he explains that everybody makes the same contributions, married or unmarried, but that the unmarried person only gets back the employee part and not the matching employer part. That's why there's a pecuniary injury, and so how I would like it redressed ultimately is to say give everyone the same choice without regard to your marital status, which has, frankly, this hidden, not purposeful, disparate impact on women, including my client. And what Mr. Grissom says at that record site is every single person, married and unmarried, makes the exact same contributions, but the unmarried people only get back $0.50. It's not exactly $0.50, but he gets the point. And I reserve the rest of my time. Thank you. No, I reserve it. This sounds like signed numbers. Thank you, Mr. Conner. May it please the Court, David Hopkins on behalf of the city of San Diego. I almost don't know where to begin. Well, let me start you off with something. You know, I would be very loath to say that a district judge has to give an opportunity to be heard on a jurisdictional issue. It's inconceivable to me that the opportunity wasn't afforded because it would avoid precisely what's happened. That is, we get an appeal and no record upon which to evaluate the merits of the standing ruling because it was never argued. It was never developed. And I've got to say, reading the complaint, it isn't immediately obvious to my district judge eyes, which are now fairly old, that there's a standing problem here. It is immediately obvious to me that there may be a huge proof problem. At the end of the day, I think it's going to be extremely difficult, if not impossible, to prove injury from the actuarial injuries that were insufficient for Title VII purposes. But can you just tell me why it should be so obvious that without argument and without a record directed to it that there's no standing? Yes. Good. Part of our motion below was that the plaintiff failed to state a claim. We cast the issue that way and explained the benefit in that context, in the context of what you were ---- You assumed marital injury. Excuse me? You assumed marital, an injury on account of marital status. No. In order to make your point that there was none on gender. No, Your Honor. No. There's no injury either way. The argument that we made, and I think that Judge Smith was getting to it, and that was made at the trial court in the context of failure to state a claim, which goes to your proof issue, the district court judge said, I think he said,  Here's the reason. Here's the argument. The way this benefit works is that Mr. Conger is right. Everybody pays in the same amount for the benefit. Upon, at the instant of retirement, the employee makes a choice. There's no discrimination or disparate treatment of any type during employment. Ms. Wood, the plaintiff in this case, is a poster child for that. She was married for part of her employment with the city, and then divorced, and then did not remarry. The critical moment is the nanosecond in time when you retire. You're either married or single at that point. If you are married, you have the ability to claim the surviving spouse benefit. Who knows what that is worth? On an average basis, system-wide, it can be calculated how much it's worth to the average surviving spouse. Not to the employee. Employee's dead. It's to the average surviving spouse. If the spouse survives the employee for a long time, that benefit becomes very valuable. Will it be more valuable than the amount of money that the single employee gets, either as a lump sum or added to their, or annuitized during the course of their retirement? Don't know. Don't know. So we don't concede marital discrimination, and we certainly don't concede gender discrimination. You just can't tell. That's why the injury is speculative, because we don't know against whom she's comparing her injury. There's a record, at least as I read it, that suggests that your own stuff shows that there's like a million and a half dollar differential. Over, if you take the value. Here's the thing. We're talking about standing. We're not talking about winning or losing. Correct. I would bet anybody that you're going to win. All right? I mean, it's a very tough road that the plaintiff is holding here, it seems to me. But that's a totally different question from whether this woman, who is a woman, who wasn't married at the time that she retired, can't make the pitch that the fact that she does not get a share of the city's contribution causes her injury. Nor does the married retiree, nor does the male retiree. He doesn't get that contribution for this benefit. He doesn't get it unless other factors kick in. And those factors are, first, the married employee, male or female, has to be married at the time of retirement. And second, that spouse has to live long enough for that surviving spouse to receive monthly benefits that outweigh the half that Ms. Wood received. If it was so clear, why didn't you move to dismiss receiving if it's so clear? Frankly, Your Honor, the judge, the trial court judge saw something that I didn't see. I do believe it is the same argument. It is the same argument. We pulled it in on failure to state a claim. Why did she fail to state a claim? Because she's got no provable injury. Right. But we both know that we all know that those are two different analyses, standing and failure to state a claim. The problem I have is that apparently we're now told we do have evidence, there is evidence that they were never, the plaintiff was never given the opportunity to show that, in fact, this does have a disparate impact on women. And it just seems from a sense of fairness that they ought to have the opportunity to put in that evidence if they have it. Your Honor, I believe that evidence was put in, as Mr. Conger said, for a completely different reason. The judge didn't buy it. Excuse me, sir. What he said was he had something right here he's holding up to us that is evidence on that very point. It's difficult for me to speak to it because I haven't seen it either. Right. Well, no one's seen it, and it's not in our records. And it's because of this kind of oddball procedure that Judge Benitez employed. Your Honor, I agree that Judge Benitez reached for the standing issue. I believe the case law is clear that he is entitled to do so and, indeed, has an obligation to do so. And then the question becomes, what evidence does he look to in doing so? And he can look to the whole under this Court's decisions. He can look to the whole summary judgment record. He did. What I understand, Mr. Conger, what you say. Sir, excuse me. But what I'm having a problem with as an appellate court judge is I don't have anything to meaningfully review to determine whether he was right. Your Honor, the facts on which the regression analysis is based are in the record. You are correct. Can I move to another point? No, no. I want to finish this point. I mean, that's what I'm saying. So what's not in there, though, is the regression analysis. So are you saying we should do the regression analysis? No, of course not. Of course not. Okay. Of course I'm not suggesting that. None of us has seen it. What it boils down to is a statistical analysis. What this judge said, and which I believe can be decided on the record, is that any individual plaintiff's injury is speculative. And what the law on retirement systems says is that you can't make global determinations. You can't ask for contributions on anything other than equal basis. You can't make payments on anything other than equal basis. And that's what has been done here. For Mrs. Wood, or Ms. Wood, I'm sorry, to claim that she was injured, she can't do that because what was she being compared to? She's being injured. Compared to whom? Compared to what? An average spouse? Any person who's an average surviving spouse? Any person who's ever been married will testify that there is no such thing as an average spouse. There's only your spouse. That there is only speculative injury as to her. The point that I wanted to get to is the other basis for this ruling, or I'm sorry, not for the ruling, but on which the case should be dismissed is failure to timely exhaust administrative remedies. This is a pension retirement plan issue. If there is any claim, it's based on disparate impact, not on its face. That means that the claim, the time to start running for bringing the claim is upon the enactment of the plan, not upon the retirement of the individual. This plan was enacted back in the 70s. Ms. Wood has been a vested member of the system since the late 70s. She cannot start her time limit running from her moment of retirement. There are several cases that we cited, the North Gibson case out of the Seventh Circuit, the Dixon case out of the Sixth Circuit, Cox out of the Sixth Circuit, all of which state and really follow the rationale of the National Railroad Retirement System case, the United States Supreme Court, that the time starts running from a discriminatory act. There's no discriminatory act here other than, if any, the enactment of the plan. The time to file that suit does not run from her retirement. When there is a disparate impact system, the plaintiff doesn't get to wait to see which side of the disparate impact they fall on. If Ms. Wood had married the day before she retired, she'd have been on the other side. She doesn't get to make that choice then. She has to challenge it at the beginning. Okay. Thank you, Mr. Hawkins. Thank you, Your Honor. We ran over with Mr. Hawkins, so we'll let you run over as well. Judge Rimer, all that I would like to say is that I would like the opportunity to prove you wrong, that I can win this case. But winning starts with being heard, and that's all I ask for. Thank you, counsel, both of you. The matter just argued will be submitted. And we'll stand at recess for the day.
judges: Rymer, Wardlaw, Smith